IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:08CR47 |
| Plaintiff, ) | |
| ) | |
| vs. ) | REPORT AND |
| ) | |
| RICHARD A. DAVIS, ) | RECOMMENDATION |
| ) | |
| Defendant. ) | |

This matter is before the court on the motion to suppress filed by defendant Richard A. Davis (Davis) (Filing No. 23). Davis is charged in the Indictment with receiving and distributing child pornography (Count I) in violation of 18 U.S.C. § 2252A and the possession of child pornography (Count II) in violation of 18 U.S.C. § 2252(a)(4). Davis seeks to suppress evidence obtained by the agents of the Department of Homeland Security, Immigration and Customs Enforcement (ICE) on November 1, 2007, at Davis's residence in Lincoln, Nebraska.

Evidentiary hearings were held on Davis's motion on July 7, August 1, and September 8, 2008. Davis was present for the hearings along with his retained counsel, Chad J. Wythers. The United States was represented by Assistant U.S. Attorney Michael P. Norris. During the hearings, the court heard the testimony of Immigration and Customs Enforcement (ICE) Special Agents Henry G. Anton (Agent Anton) and Reinaldo Hernandez (Agent Hernandez) and the defendant Davis. The court also received into evidence a consent to search (Exhibit 1) and an affidavit and application for a search warrant together with the search warrant and return and inventory (Exhibit 2). Transcripts of the hearings (TR37. and TR44.) were filed on August 8, 2008 (Filing No. 37) and September 15, 2008 (Filing No. 44).

**FINDINGS OF FACT**

The cyber crimes unit of ICE conducts undercover investigations relating to commercial web sites that distribute child pornography through the computer (TR37. 4). One project was known as Project Flicker where the cyber crimes unit identifies individuals

who use PayPal for payment to subscribe to known child pornography web sites and refers those individuals to local ICE offices for further investigation (TR37. 5; 32).  In 2007, the Omaha ICE office received an assignment regarding Davis making a payment through PayPal for a subscription to a website containing child pornography (TR37. 5).  However, the internet provider (IP) address being used was assigned to a Daniel Loven in Minnesota (TR37. 5).  ICE agents determined Davis resided in Lincoln, Nebraska, by performing various record checks and doing some surveillance of the residence (TR37. 6).  Since the IP address did not match the PayPal address, ICE agents decided to approach Davis and speak to him (TR37. 7).

Before approaching Davis, the ICE agents coordinated with Nebraska State Patrol (NSP) Trooper Eric Jones (Trooper Jones) who conducts child pornography investigations for the NSP in the Lincoln area (TR37. 9).  Trooper Jones agreed to stand by while the ICE agents talked with Davis (TR37. 9).  On November 1, 2007,[1] ICE agents Anton, Hernandez, and Buckley drove to Davis's residence to perform a "knock and talk" (TR37. 9).  The first time they approached the residence, nobody was at home (TR37. 9).  Around seven o'clock in the evening, the agents made a second attempt and knocked on the door of the Davis residence (TR37. 9).  Mrs. Davis answered the door (TR37. 9).  Agent Anton asked to speak with Mr. Davis (TR37. 11).  Mrs. Davis said she would get him and left the door area while the agents remained outside (TR37. 11).

When Davis came to the door, Agent Anton identified himself and the other agents as "Special Agents with Immigration and Customs Enforcement" and displayed his credentials (TR37. 12).  Agent Anton stated the agents would like to speak with Davis and asked if they could come in (TR37. 12).  Davis opened the door to the agents and led them into the living room area (TR37. 12).  Mrs. Davis was not present in the living room, but was present in a room to the left of the living room (TR37. 13).  Davis was seated on a sofa with Agent Anton seated on a sofa next to Davis (TR37. 14).  Agent Hernandez was standing to Agent Anton's left and Agent Buckley was standing to Agent Anton's right rear (TR37. 14).

---

[1] Originally, Agent Anton testified the encounter took place on November 2, 2007, but adjusted the date to November 1, 2007, after viewing the dated consent form (Exhibit 1; TR37. 20).

Before Agent Anton could explain why the agents were there, Davis was adamant to know why the agents were there (TR37. 14). Agent Anton told Davis they were conducting an investigation regarding child pornography (TR37. 15). Agent Anton asked if there were any computers in the house (TR37. 15). Davis told the agents there were two computers in the house  - one of them being his wife's computer upstairs that was used strictly for work (TR37. 15). Davis said his internet service provider was Nebraska Road Runner (TR37. 15-16). When asked if he ever received child pornography on his computer, Davis stated he may have received some through his e-mail and some may have been saved on his computer (TR37. 16). When asked if he subscribed to any commercial web sites that contained child pornography, Davis responded that he did not (TR37. 16). When asked if he knew a person by the name of Daniel Loven, Davis said he did not (TR37. 16).

Agent Anton asked Davis if the agents could do a preview of his computer to determine if there was any child pornography on it (TR37. 17). Agent Hernandez explained a preview would be an examination of the images on the computer by a computer forensics expert with equipment and would not alter anything on the computer (TR37. 17). Davis said "I don't know if I want to allow that." (TR37. 17). Davis immediately followed up with the question "What would be the next step if I don't?" (TR37. 17). Agent Anton stated the agents would seek a seizure warrant through the state (TR37. 17). Davis was told an agent would remain at the house while the agents applied for a search warrant (TR37. 27). Davis was told that if a seizure warrant was pursued, the agents would be back with local authorities to serve the warrant (TR37. 26). Agent Hernandez added that if the agents obtained a search warrant more local police officers would show up which would draw attention (TR44. 30). Agent Anton stated Davis "just basically threw up his arms in the air and said: 'Just take it. You're going to find it anyway.'" (TR37. 18). Agent Anton then presented Davis with a consent form to search the computer (TR37. 19-20). Agent Anton presented the form to Davis and asked him to read it (TR37. 21). Agent Anton told Davis it was strictly voluntary for him to sign the form and that Davis had the right to refuse to sign the form (TR37. 21). While Davis read the form, Davis stated he did not know it was illegal to possess child pornography (TR44. 33). Davis appeared to read the form and then

signed the form and dated it (TR37. 22).  Davis then led the agents to the study where the computer was located and where his wife was seated (TR37. 22).  When Davis's wife asked what was going on, Davis replied "They're taking the computer 'cause it has child pornography'" (TR37. 22; TR44. 34).  Davis had told the agents he had a cabin in Minnesota and when asked if there was a computer in the cabin, Davis said the computer in the room was the computer he took to the cabin in Minnesota (TR44. 44-45).  Mrs. Davis asked Agent Hernandez if her husband could get some baseball statistics off the computer before the agents took the computer (TR37. 23).  Mrs. Davis was informed that the download of the statistics would not be allowed (TR37. 22).  The computer was then seized by the agents.

Davis testified he was scared when the agents told him they would not leave and would return with a search warrant (TR44. 62-63).  He further testified that he was afraid the agents would also seize or interfere with his wife's computer which she used for her work at Immigration (TR44. 65).  Davis also testified he was afraid the agents would destroy the house like he had seen on television if the agents got a warrant (TR44. 63-64).  Davis testified he felt extreme pressure to sign the consent form and did not do so willingly (TR44. 67-68). David testified he was a college graduate with B.S. degree from Iowa State with a major in business and accounting (TR44. 71).  Davis testified he worked for a number of federal agencies with Immigration being his last agency before he retired in 1997 (TR44. 71).  His wife also presently is employed with Immigration (TR44. 71).  Davis recalled no raising of voices by the agents nor was Davis impaired to the extent he did not know what was occurring (TR44. 73-75).  Davis claimed his "consent" was involuntary (TR44. 68).

## LEGAL ANALYSIS

Davis asserts he did not voluntarily consent to the seizure of his computer and seeks the suppression of certain of his statements and any evidence taken from his home.

The Fourth Amendment test for valid consent to search is that the consent be voluntary, and such "[v]oluntariness is a question of fact to be determined from all the circumstances."   *Ohio v. Robinette,* 519 U.S. 33, 40 (1996).   Some personal

characteristics that aid in determining voluntariness of consent are age, intelligence, whether an individual was under the influence of drugs or alcohol, whether an individual was read his *Miranda* rights, and whether an individual had experienced prior arrests. **See** [United States v. Comstock, 531 F.3d 667, 676-77 (8th Cir. 2008)](listing factors).  A court may also look at environmental factors including, the period of time that the individual was detained; whether the police threatened, physically intimidated, or punished the individual; whether promises or misrepresentations were made upon which the individual relied; whether the individual was in custody or under arrest at the time of consent; whether the consent occurred in a public or secluded place; and whether the individual objected or stood by silently while the search occurred.  [Id.](#) (**citing** [United States v. Saenz, 474 F.3d 1132, 1137 (8th Cir. 2007)](#)).

"When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." [Bumper v. North Carolina, 391 U.S. 543, 548-49 (1968)](#) (footnotes omitted). "In order for a consensual search to be valid, consent must actually be given (either express or implied), and the person giving consent must have (actual or apparent) authority to do so." [United States v. Williams, 521 F.3d 902, 906 (8th Cir. 2008)](#).  The government bears the burden of proving voluntary consent to search by a preponderance of evidence. [United States v. Esquivel, 507 F.3d 1154, 1159-60 (8th Cir. 2007)](#).

Even though several law enforcement officers were present in Davis's residence, the court finds the officers did not physically threaten, coerce, or intimidate Davis to provide his written consent to the seize the computer. [United States v. Lee, 356 F. 3d 831, 835 (8th Cir. 2003)](#).  To the extent that Davis testified to the contrary, the court credits the testimony of Agents Anton and Hernandez as to the details of the events leading up to and following the signing of the consent form.  While Davis was afraid, he was afraid of the situation where he knew he had child pornography on his computer, not because of what the ICE agents said or did.  Any police questioning has coercive aspects to it simply by reason of the confrontation.  A police officer is part of the law enforcement system that will cause a charge to be made against a suspect.  However, the questioning by a police

officer, while uncomfortable, is not coercive *per se*. See *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). Davis is a well educated person and had worked for Immigration for sixteen years before retiring. Neither Davis nor Mrs. Davis objected or withdrew the consent to take the computer even when told they would not be able to immediately access the baseball statistics on the computer. Neither Davis nor Mrs. Davis were restrained or arrested at the time the ICE agents were present in the residence. The court finds Davis was told the agents would seek a search warrant and that an agent would remain in the residence pending the receipt of such a warrant. Such statements did not render Davis's consent to search invalid. *United States v. Dennis*, 625 F.2d 782, 793 (8th Cir. 1980). Under the totality of the circumstances present, no single factor or combination of factors render Davis's consent involuntary. See *Comstock*, 531 F.3d at 678.

The courts finds Davis voluntarily consented to the seizure of the computer and voluntarily made statements to the ICE agents. Davis's motion to suppress should be denied.

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

Davis's motion to suppress (Filing No. 23) be denied.

### ADMONITION

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) business days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 30th day of October, 2008.

BY THE COURT:

s/Thomas D. Thalken<br>
United States Magistrate Judge